**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-CV-00051-HBB**

HEATHER A. ENNIS                                                      PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                          DEFENDANT

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

<u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Heather A. Ennis ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 14) and Defendant (DN 20) have filed a Fact and Law Summary.  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).  By Order entered September 1, 2020 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

1

<u>FINDINGS OF FACT</u>

On July 15, 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 65, 285-93, 294-300).   Plaintiff alleged that she became disabled on September 30, 2014, as a result of schizophrenia, hearing issues, anxiety, depression, and Post Traumatic Stress Disorder ("PTSD") (Tr. 65, 129-30, 141-42, 158, 172, 314). Administrative Law Judge Joseph R. Doyle ("ALJ") conducted a video hearing from Saint Louis, Missouri (Tr. 65, 95).   Plaintiff and her counsel, Charles Dale Burchett, participated from Bowling Green, Kentucky (<u>Id.</u>).   Jacquelyn E. Wenkman, an impartial vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated January 2, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 65-84).   The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015 (Tr. 69).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 30, 2014, the alleged onset date (Tr. 70, Finding No. 2).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder; bipolar disorder; PTSD; schizophrenia; depressive disorder; and postural orthostatic tachycardia syndrome ("POTS") (Tr. 70, Finding No. 3).   The ALJ also determined that Plaintiff's hearing issues are a "non-severe" impairment within the meaning of the regulations (Tr. 70-71).   At the third step, the ALJ concluded from September 30, 2014, through February 28, 2017, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 71, Finding No. 4).

2

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following environmental, mental, and off-task limitations: only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights; limited to simple, routine, and repetitive tasks, and work in a low-stress job, defined as one having only occasional decision-making and occasional changes in the work setting; limited to work establishing only production quotas that are based on end of workday measurements; limited to no interaction with the public and only occasional interaction with coworkers; and limited to work that permitted her to consistently remain off-task greater than fifteen-percent of the workday in addition to regularly scheduled breaks (Tr. 71, Finding No. 5).   Additionally, the ALJ relied on testimony from the vocational expert to find from September 30, 2014, through February 28, 2017, Plaintiff was unable to perform her past relevant work as an x-ray technician and ultrasound technician (Tr. 76-77, Finding No. 6).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 77-78, Finding Nos. 7-10).   The ALJ found from September 30, 2014, through February 28, 2017, there were no jobs that existed in the national economy that Plaintiff could have performed (Tr. 77-78, Finding No. 10).   Therefore, the ALJ concluded that Plaintiff was under a "disability," as defined in the Social Security Act, from September 30, 2014, through February 28, 2017 (Tr. 78, Finding No. 11). Further, the ALJ determined that Plaintiff's substance abuse disorder is not a contributing factor material to the determination of disability (Tr. 78, Finding No. 12).

However, the ALJ found that beginning March 1, 2017, Plaintiff's disability ended due to her experiencing a medical improvement (Tr. 78-80, Finding Nos. 13, 14, 15).   Further, the ALJ determined that the medical improvement is related to Plaintiff's ability to work due to an increase in her RFC (Tr. 80, Finding No. 16).   The ALJ concluded that beginning March 1, 2017, Plaintiff had the RFC to perform medium work with the following limitations: limited to only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights; limited to the performance of simple, routine, and repetitive tasks, and work in a low-stress job, defined as one having only occasional decision-making and occasional changes in the work setting; limited to work establishing only production quotas that are based on end of workday measurements; and limited to no interaction with the public and only occasional interaction with coworkers (Tr. 80-81, Finding No. 17).   The ALJ relied on testimony from the vocational expert to find Plaintiff has remained unable to perform her past relevant work since March 1, 2017 (Tr. 83, Finding No. 18).   The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 83-84, Finding Nos. 19, 20, 21, 22).   Based on the vocational expert's testimony, the ALJ determined that, beginning March 1, 2017, Plaintiff' has been capable of making a successful adjustment to work that exists in significant numbers in the national economy (Tr. 83-84, Finding No. 22).   Therefore, the ALJ concluded Plaintiff's disability ended March 1, 2017, and Plaintiff has not become disabled again since that date (Tr. 84, Finding No. 23).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 282-84).   The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

6

> 5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding Nos. 4 and 14

1.   Arguments of the Parties

Plaintiff points out the ALJ's decision divides the relevant period of alleged disability into two time periods for the purpose of adjudication of her claim (DN 14 PageID # 1287).   They are: (1) September 30, 2014 through February 28, 2017, which is addressed in Finding No. 4; and (2) March 1, 2017 through January 2, 2019, which is addressed in Finding No. 14 (Id.).   Plaintiff explains, in Finding Nos. 4 and 14 the ALJ indicated he "finds no evidence" that the severe psychiatric-based impairments "reached the level of severity contemplated in the Listings" (PageID # 1287, 1291, citing Tr. 71; 78-80).   Plaintiff disputes these findings by relying on an August 2018 report prepared by her treating psychiatrist, Dr. Larson (Id. at PageID # 1288, citing Tr. 1057-60).   Plaintiff argues that Dr. Larson concluded her mental impairments met the required criteria of depressive disorder and bipolar disorder under Listings 12.04(A) and neurodevelopmental disorder under Listing 12.11(A) (Id. at PageID # 1288, citing Tr. 1057-60).[1] Further, asserts Plaintiff, Dr. Larson addressed the "Part B" criteria of Listings 12.04 and 12.11 and found "extreme" limitations in her ability to understand, remember, and apply information;

---

[1] According to Plaintiff, Dr. Larson supported his conclusion with statements that Plaintiff exhibited depression and mania through her course of treatment with significant mood lability and occasional paranoia (DN 14 PageID # 1288, citing Tr. 1057).   Additionally, Dr. Larson provided supportive statements that the Plaintiff had chronic and significant problems with maintaining attention, concentration, and task completion (Id. citing Tr. 1058).   Further, Dr. Larson noted that Plaintiff's ADHD symptoms were not yet being addressed in treatment as the current focus was toward stabilizing moods and controlling paranoia (Id. citing Tr. 1058).

7

ability to interact with others; ability to maintain concentration, persistence, and pace; and ability to adapt and manage oneself (Id. citing Tr. 1059-1060).[2]   Plaintiff points out that Dr. Larson also found application of the "Part C" criteria of Listing 12.04, noting the Plaintiff needed guidance of her parents in completing her activities of daily living (Id. citing Tr. 1060).   Although the ALJ acknowledged Dr. Larson's opinion, he failed to address the substance of that medical opinion (Id. PageID # 1289, citing Tr. 75).   Instead, the ALJ merely observed that the determination whether a claimant meets or equals the requirements of a listing is reserved to the Commissioner (Id.). Plaintiff asserts the ALJ should have provided "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight" (Id. PageID # 1290, citing 20 C.F.R. § 404.1527(c)(2) and Cole v. Comm'r, 661 F.3d 931, 937 (6th Cir. 2011)).

Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or medically equal Listings 12.04 and 12.11 during both time periods because she lacks at least two "marked" limitations or one "extreme" limitation in the paragraph B criteria (DN 20 PageID # 1313-16, citing Finding Nos. 4 and 14).   Defendant notes "the crux of Plaintiff's arguments is that the ALJ erred in evaluating the opinions of her treating psychiatrist Stuart W. Larson in determining that she did not meet or equal Listings 12.04 and 12.11" (Id. PageID # 1314).   Defendant responds by arguing the ALJ considered the record as a whole when he evaluated Dr. Larson's medical opinions and concluded Plaintiff did not meet or

---

2 Plaintiff contends that Dr. Larson provided supportive statements based upon information gathered throughout treatment indicating Plaintiff was distracted easily, changed jobs five times in six years due to difficulties getting along with coworkers, had extreme difficulties completing tasks, does not do well with changes, and had trouble accepting criticism and correction. (DN 14 PageID # 1288, citing Tr. 1059-60).

medically equal the listings during either time period (Id. PageID # 1313-16).   Defendant also points out that other than citing Dr. Larson's opinion, Plaintiff fails to identify medical evidence in the record demonstrating she met or equaled all the criteria of Listings 12.04 and 12.11 (Id. citing 20 C.F.R. § 404.1514; Thacker v. Soc. Sec. Admin., 93 F. App'x 725, 727-28 (6th Cir. 2004) (claimant must present specific medical evidence that satisfies the various tests listed in the description of the applicable listing)).   Defendant indicates that the ALJ explained, with citation to the evidence, why Plaintiff had only "moderate" limitations in the paragraph B criteria for each of the two time periods (Id. PageID # 1316-23, citing Tr. 78-80, 1046-54, 1077-1205). Additionally, Defendant asserts the ALJ, in connection with the RFC determination, explained the reasons why he assigned only "some weight" to Dr. Larson's opinions regarding the degree of limitation in the four areas of function known as the paragraph B criteria (Id. citing Tr. 74-75). Further, Defendant points out that opinions that a claimant is disabled or unable to work are opinions on an issue reserved for the Commissioner (Id. citing 20 C.F.R. § 404.1527(d)).

2.    Applicable Law

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. §§ 404.1525(a), 416.925(a).

9

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.927(c)(3). A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled. *See* 20 C.F.R. §§ 404.1525(c)(3) and (d), 416.925(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Turner, 381 F. App'x at 491. Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. *See* 20 C.F.R. §§ 404.1526(c) and (d), 416.926(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

Plaintiff's claim focuses on two of the listings addressing mental disorders. Those listings read as follows:

> **12.04** *Depressive, bipolar and related disorders* (see 12.00B3), satisfied by A and B, or A and C:
> A. Medical documentation of the requirements of paragraph 1 or 2:
> 1. Depressive disorder, characterized by *five* or more of the following:

    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.
2. Bipolar disorder, characterized by *three* or more of the following:
a. Pressured speech;
b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;
f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
  1. Understand, remember, or apply information (see 12.00E1).
  2. Interact with others (see 12.00E2).
  3. Concentrate, persist, or maintain pace (see 12.00E3).
  4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
  1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
  2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

. . .

11

**12.11** *Neurodevelopmental disorders* (see 12.00B9), satisfied by A and B:

  A. Medical documentation of the requirements of paragraph 1, 2, or 3:

    1. *One* or both of the following:

      a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

      b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

    2. Significant difficulties learning and using academic skills; or

    3. Recurrent motor movement or vocalization.

AND

  B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

    1. Understand, remember, or apply information (see 12.00E1).

    2. Interact with others (see 12.00E2).

    3. Concentrate, persist, or maintain pace (see 12.00E3).

    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listings 12.04 and 12.11.

The severity requirements for Listings 12.04 and 12.11 are set forth in paragraph "B" of each listing.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A).   The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "*3. Concentrate, persist, or maintain pace (paragraph B3)*"; and "*4. Adapt or manage oneself (paragraph B4)*".   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E)(1)-(4).   These four areas of mental functioning are evaluated on the following five-point rating scale:

    a. *No limitation (or none)*.   You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

    b. *Mild limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

12

c. *Moderate limitation*.    Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation*.    Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation*.    You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(a)-(e).   To satisfy the paragraph "B" criteria for Listings 12.04 and 12.11, a claimant's mental disorder must result in extreme limitation in one, or marked limitation in two, of the four areas of mental functioning.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listing 12.04 and Listing 12.11.

The paragraph "C" criteria in Listing 12.04 are an alternative to the paragraph "B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(1).   The paragraph "C" criteria are used "to evaluate mental disorders that are 'serious and persistent.'"   Id.   The Administrative Law Judge will "find a mental disorder to be 'serious and persistent' when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(a).   "The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D)."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(b).   "The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(c).   "'Marginal

13

adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."   Id.

The Sixth Circuit has instructed when an Administrative Law Judge finds that a claimant does not meet or medically equal a specific listing, the Administrative Law Judge must actually evaluate the evidence, compare it to the section of the Listing at issue, and "give an explained conclusion, in order to facilitate meaningful judicial review."   Johnson v. Saul, No. 1:18-CV-00175-HBB, 2019 WL 5902168, at *5 (W.D. Ky. Nov. 12, 2019) (quoting Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011)).   "Without it, it is impossible to say that the [Administrative Law Judge's] decision at Step Three was supported by substantial evidence. Reynolds, 424 F. App'x at 416.   Subsequent to the Sixth Circuit expressing these articulation requirements, Social Security Ruling 17-2p [hereinafter "SSR 17-2p"] became effective.[3]

Notably, SSR 17-2p expresses articulation requirements for a favorable and an unfavorable finding on the issue of medical equivalence.   2017 WL 3928306 at *4 (March 27, 2017). Considering Plaintiff's arguments, the Court need only discuss the latter.   In pertinent part, SSR 17-2p instructs that an Administrative Law Judge "must consider all evidence in making a finding

---

3 Social Security Ruling 17-2p [hereinafter "SSR 17-2p"] rescinded and replaced Social Security Ruling 96-6p [hereinafter "SSR 96-6p"] as of its effective date, March 27, 2017.   2017 WL 3928306, at *1 (March 27, 2017).   The Court acknowledges a split among the district courts within the Sixth Circuit as to whether SSR 17-2p or the now rescinded SSR 96-6p applies to cases where, as here, the application for benefits was filed before the effective date for SSR 17-2p but the Administrative Law Judge conducted the administrative hearing and issued the decision after March 27, 2017.   See Thomas o/b/o C.T. v. Berryhill, No. 18-CV-02467-TLP-tmp, 2019 WL 7580293, at *8-9 (W.D. Tenn. Nov. 7, 2019) (survey of such cases), report and recommendation adopted, Thomas v. Comm'r of Soc. Sec., No. 2:18-CV-02467-TLP-tmp, 2020 WL 214754 (W.D. Tenn. Jan. 14, 2020).   The Court finds the reasoning in Thomas persuasive and concludes that SSR 17-2p, not SSR 96-6p, applies here because the ALJ conducted the administrative hearing and issued the decision after March 27, 2017.   Id.

that [a claimant's] impairment(s) does not medically equal a listing." <u>Id.</u>  This appears to be consistent with the Sixth Circuit's instruction that an Administrative Law Judge must "actually evaluate the evidence." <u>Reynolds</u>, 424 F. App'x at 416.   However, SSR 17-2p also instructs:

> If [an Administrative Law Judge] believes the evidence already received in the record does not reasonably support a finding that the [claimant's] impairment(s) medically equals a listed impairment, the [Administrative Law Judge] is *__not required to articulate specific evidence__* supporting his or her finding that the [claimant's] impairment(s) does not medically equal a listed impairment. *__Generally__*, *__a statement__* that the individual's impairment(s) *__does not medically equal a listed impairment constitutes sufficient articulation__* for this finding.

2017 WL 3928306 at *4 (emphasis added).   At first blush, this appears contrary to the Sixth Circuit's requirement that the Administrative Law Judge compare the evidence to the section of the Listing at issue and "give an explained conclusion, in order to facilitate meaningful judicial review." <u>Reynolds</u>, 424 F. App'x at 416.   However, SSR 17-2p explains:

> An adjudicator's *__articulation of the reason__*(s) why the individual is or is not disabled *__at a later step__* in the sequential evaluation process *__will provide rationale that is sufficient for a__* subsequent reviewer or *__court to determine the basis for the finding__* about medical equivalence at step 3.

<u>Id.</u> (emphases added).   Construing SSR 17-2p in a light most consistent with the Sixth Circuit's instructions in <u>Reynolds</u>, while an Administrative Law Judge is not required to do so at step three, he or she must provide a sufficient explanation for a court to determine the basis for the unfavorable finding about medical equivalence.

2.  Discussion

In Finding No. 4, the ALJ began with his conclusion "[f]rom September 30,2014, through February 28, 2017, the claimant did not have an impairment or combination of impairments that

15

met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P,

Appendix 1 . . ." (Tr. 71).   In the discussion that followed, the ALJ specifically analyzed whether

Plaintiff's mental impairments meet or medically equal a mental disorder listing:

> The undersigned considered the claimant's impairments but ***finds no evidence*** that said impairments reached the level of severity contemplated in the Listings.   The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and ***no acceptable medical source designated to make equivalency findings concluded*** that the claimant's impairments medically equaled a listed impairment.
>
> Additionally, the undersigned finds that, from September 30, 2014, through February 28, 2017, the claimant had the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: a ***moderate*** limitation in understanding, remembering, or applying information, a ***marked*** limitation in interacting with others, a ***moderate*** limitation in concentrating, persisting, or maintaining pace, and a ***moderate*** limitation in adapting or managing oneself. Additionally, the claimant's mental impairments did not satisfy the paragraph "C" criteria of the applicable mental disorder listings.

(Id. emphasis added).   Although Listings 12.04 and 12.11 are not expressly mentioned, the ALJ's

discussion unambiguously indicates from September 30, 2014 through February 28, 2017

Plaintiff's mental impairments did not meet any mental disorder listing because he fails to satisfy

the paragraph "B" or, where applicable, the paragraph "C" criteria.   Additionally, the ALJ

unmistakably specifies that Plaintiff's mental impairments are not the medical equivalent of any

mental disorder listing.   Notably, at this step, the ALJ only makes a general reference to the

medical evidence in the record substantiating his conclusions.   Additionally, the ALJ does

not explain his comment "**no acceptable medical source designated to make equivalency**

**findings concluded** that the claimant's impairments medically equaled a listed impairment" (Id. emphasis added).

At step four, the ALJ provides a comprehensive evaluation of the evidence in connection with the RFC determination in Finding No. 5 (Tr. 71-76).   This assessment is complete enough to also facilitate a meaningful judicial review of the ALJ's step three conclusions (Id.).   It discusses the medical signs, symptoms, diagnostic findings, and medical source statements expressing functional limitations imposed by Plaintiff's mental conditions (Id.).   Additionally, the ALJ's assessment discusses the weight he assigned to the medical source statements in the record (Id.).   For example, Dr. Larson rendered opinions concerning the paragraphs "B" and "C" criteria when he filed out a mental RFC form (Tr. 1059-60).   Dr. Larson indicated Plaintiff satisfied the paragraph "B" criteria because he opined that Plaintiff had an "Extreme" limitation in the first three areas of mental functioning and a "Marked" limitation in the fourth area of mental functioning (Id.).[4]   Additionally, Dr. Larson opined that Plaintiff satisfied the paragraph "C" criteria for Listing 12.04 (Tr. 1060).   The ALJ observed that the determination whether Plaintiff meets or medically equals a listing is reserved to the Commissioner (Tr. 75).   Notwithstanding, the ALJ assigned "some weight" to Dr. Larson's opinions because they were only "partially supported" by the evidence of record (Tr. 74-75, citing Tr. 447-448, 455-590, 700-02, 703, 753-826, 1059-60).[5]

---

[4] Dr. Larson completed and signed the form on August 8, 2018 (Tr. 1055-61).

[5] Despite mistakenly indicating Dr. Larson issued the assessment in June 2016 and in one instance incorrectly citing Exhibit 39F instead of Exhibit 40F, the ALJ discussed the mental RFC form that Dr. Larson filed out on August 8, 2018 (Tr. 74-75, 1059-60).   The ALJ's assignment of weight to Dr. Larson's opinions is supported by substantial evidence in the record and comports with applicable law (see Tr. 75, citing Tr. 447-448, 455-590, 700-02, 703, 753-826).   See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

Notably, the regulations direct that an Administrative Law Judge looks to opinions from the state agency psychological consultants and/or the opinion of a testifying medical expert for guidance on the issue of whether a claimant's impairment is the medical equivalent of a listing. *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).   At step four, the ALJ explained that he assigned only some weight to the opinions expressed by the non-examining state agency psychological consultants because subsequently received evidence regarding Plaintiff's capacity for remaining on-task[6] warranted additional restrictions beyond those provided by the psychological consultants (Tr. 74).[7]   Thus, the ALJ explained why he found that no acceptable medical source designated to make equivalency findings concluded that Plaintiff's mental impairments medically equaled a mental disorder listing.

After reviewing the ALJ's evaluation of the evidence at step four, the Court understands why the ALJ indicated he "finds no evidence" that Plaintiff's mental impairments reached the level of severity contemplated in the mental disorder Listings (Id.).   More importantly, when the ALJ's step three comments and the step four evaluation of the evidence are considered together, the Court concludes the ALJ has complied with applicable law because he provided an explained conclusion that facilitates meaningful review.   Additionally, the ALJ's findings are supported by substantial

---

6 The ALJ found that "due to a combination of the [Plaintiff's] mental health symptoms and associated treatment, she was limited to work that permitted her to consistently remain off-task greater than fifteen-percent of the workday in addition to regularly scheduled breaks from September 30, 2014, through February 28, 2017" (Tr. 73).

7 At the initial and reconsideration levels, the state agency psychological consultants opined that Plaintiff had moderate limitations as to the paragraph "B" criteria and the evidence did not establish the presence of the paragraph "C" criteria (Tr. 134-35, 146-47, 164, 178).   The ALJ's assignment of weight to these opinions is supported by substantial evidence in the record and comports with applicable law.   *See* Gayheart, 710 F.3d at 376.

evidence in the record.   Therefore, Plaintiff's challenge to Finding No. 4 is without merit.

In Finding No. 14, the ALJ found that "[b]eginning March 1, 2017, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 . . ." (Tr. 78).   In the discussion that follows, the ALJ provided the following explanation:

> As discussed in this decision, the undersigned considered the claimant's impairments but *finds no evidence* that said impairments reach the level of severity contemplated in the Listings as of March 1, 2017.   The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and *no acceptable medical source designated to make equivalency findings has concluded* that the claimant's impairments medically equal a listed impairment.
>
> Beginning March 1, 2017, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.03, 12.04, 12.06, 12.11, or 12.15.   In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied . . . .   Based on the evidence of record and testimony at hearing, the undersigned determined that *beginning March 1, 2017*, the claimant has *moderate limitations* with respect to her capacity for understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself.
>
> At hearing, the claimant indicated that her medications have helped improved her symptoms somewhat, and she acknowledged that she does not suffer from ongoing delusions, laughing episodes, or talking to herself.   Similarly, she reported she is capable of handling her hygiene, but she requires reminders and receives help from her parents for transportation given her difficulty with directions.   Additionally, according to office notes from early 2017, the claimant reported that she was thinking about going back to work, and she was noted to have improved ability to keep her area tidy as well as do her laundry and perform other basic tasks for herself (Exhibit 42F).   Although the claimant reported some

19

ongoing difficulties with being forgetful and maintaining focus, she also indicated improvement in her symptoms with receipt of her medication (Exhibit 42F). Her therapist noted ongoing sobriety during this period, felt that she was doing "OK" with her medication, and noted that the claimant was handling stressors very well with a positive attitude (Exhibit 42F). According to subsequent treatment notes in 2017, the claimant continued to report improvement with more good days that [sic] bad days, and she reported that her nightmares had mostly stopped and that she was able to get her driver's license again (Exhibit 42F). Similar reports of improved mental functioning continued into 2018 (Exhibit 38F).

Based on these findings, the evidence of record, and testimony at hearing, the undersigned determined that beginning March 1, 2017, the claimant has moderate limitations with respect to her capacity for understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Because the claimant's mental impairments do not cause at least two "marked" limitations or one extreme limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Specifically, as discussed in this decision, the claimant does not meet the requirements of the paragraph C criteria of Listings 12.03, 12.04, 12.06, 12.11, or 12.15 as the evidence fails to show that changes or increased demands have led to exacerbation of the claimant's symptoms and deterioration in functioning, such as an inability to function outside the home or a more restrictive setting, without substantial psychosocial supports as described in Listing 12.00D. Similarly, the evidence lacks documented episodes of deterioration that required hospitalization or absence from work, making it difficult to sustain work activity over time, due to mental impairments.

(Tr. 78-80) (emphasis added). Here, Listings 12.04 and 12.11 are expressly addressed and the

ALJ's discussion unambiguously indicates beginning March 1, 2017, Plaintiff's mental

impairments did not meet any mental disorder listing because she fails to satisfy the paragraph "B"

or, where applicable, the paragraph "C" criteria (Id.). Additionally, the ALJ unmistakably

designates that Plaintiff's mental impairments are not the medical equivalent of any mental disorder listing (Id.).   Further, the ALJ provides specific references to evidence in the record substantiating his conclusions (Id.).   And as explained above, the ALJ explains his comments "finds no evidence" and "no acceptable medical source designated to make equivalency findings concluded" that the claimant's impairments medically equaled a listed impairment" (Id.)   When the ALJ's comments and the step four evaluation of the evidence are considered together, the Court concludes the ALJ has complied with applicable law because he provided an explained conclusion that facilitates meaningful review.   Additionally, the ALJ's findings are supported by substantial evidence in the record.   Therefore, Plaintiff's challenge to Finding No. 14 is without merit.

Finding Nos. 15, 16, 17

    1.   Arguments of the Parties

Next, Plaintiff challenges the ALJ's determination that Plaintiff's closed period of disability ended as of March 1, 2017, due to a medical improvement related to her mental RFC (DN 14 PageID # 1291, 1292-94, Finding Nos. 15, 16, 17).   Plaintiff begins by explaining the closed period of disability was based on the ALJ's finding that Plaintiff was limited to work that permitted her to consistently remain off-task greater than 15% of the workday in addition to scheduled breaks (Id. citing Tr. 74, Finding No. 5).   Plaintiff asserts that this finding is partially based on the opinion of Dr. Larson (Id. citing Tr. 74-75).   Plaintiff argues the ALJ's finding of medical improvement in March 2017 is based on the mistaken belief that Dr. Larson expressed that medical opinion in June 2016 (Id. citing Tr. 74-75).   Plaintiff explains that Dr. Larson actually expressed that medical opinion in August 2018, eighteen months after the supposed date of medical improvement (Id. citing Tr. 74-75, 1055-56).   Plaintiff contends "[t]he overall decision to rely

upon Dr. Larson's 2018 opinion to support a conclusion that a period of disability occurred only through March 2017 constitutes error" (<u>Id.</u>).   Plaintiff also contends "[t]he failure to consider the opinion in addressing the time period after March 2017 was equally erroneous" (<u>Id.</u>).   Plaintiff faults the ALJ for failing to consider Dr. Larson's 2018 opinion in assessing her mental RFC beginning March 1, 2017 (<u>Id.</u>).

Defendant asserts the ALJ cited medical treatment records indicating an improvement in Plaintiff's symptoms and mental functioning as well as Plaintiff's own testimony in support of the finding that beginning March 1, 2017, Plaintiff no longer required a limitation to consistently remain off-task greater than 15% of the workday in addition to regularly scheduled breaks (DN 20 PageID # 1323-29, citing Tr. 80-82, 1077-1205).   For example, the ALJ noted that Plaintiff testified she no longer suffered from ongoing delusions, laughing episodes, or talking to herself, and had not required additional hospitalization (<u>Id.</u> citing Tr. 73, 82).   Defendant acknowledges the ALJ considered Dr. Larson's opinion, but argues Plaintiff fails to show how the evidence as a whole undermines the ALJ's determination of medical improvement beginning on March 1, 2017 (<u>Id.</u>).

2.   Discussion

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); <u>Rudd v. Comm'r of Soc. Sec.</u>, 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC).   An Administrative Law Judge makes this finding based on a consideration of medical opinions and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c),

416.929, 416.945(a), 416.946(c).   Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge.   20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913(a)(2), 416.913a(b), 416.927, 416.945(a)(3).   Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

On August 8, 2018, Dr. Larson filed out a mental RFC form (Tr. 1055-60).   In doing so, Dr. Larson considered the four areas of mental functioning known as the paragraph "B" criteria and opined that Plaintiff had "extreme" limitations in the first three areas and a "marked" limitation in the fourth area (Tr. 1059-60).   Plaintiff is correct, the ALJ mistakenly reported that Dr. Larson issued his assessment in June 2016 (Tr. 74).   But nothing in the ALJ's decision substantiates Plaintiff's claim that the ALJ relied on Dr. Larson's assessment to find a medical improvement occurred as of March 1, 2017, the date Plaintiff's disability ended (Tr. 80-83).   In fact, the ALJ made it abundantly clear in Finding Nos. 15, 16, and 17 that he relied on the treatment records and Plaintiff's own testimony to find a medical improvement occurred in her symptoms and mental functioning as of March 1, 2017, and that it resulted in a change to Plaintiff's mental RFC (Tr. 80-83, citing Tr. 1044-45, 1077-1206).   Thus, the ALJ's finding of medical improvement beginning March 1, 2017 is based on the treatment records and Plaintiff's own testimony, not the mistaken belief that Dr. Larson expressed his medical opinions in June 2016.

Equally unavailing is Plaintiff's speculation that the result might have been different if the ALJ had been aware that Dr. Larson prepared his medical assessment in August of 2018, not June 2016.   In an earlier part of the decision the ALJ gave "some weight" to Dr. Larson's opinions because they were only "partially supported" by the evidence addressing Plaintiff's condition during the closed period of disability (Tr. 74-75, citing Tr. 447-448, 455-590, 700-02, 703, 753-826, 1059-60).[8]   Thus, in assigning "some weight" to Dr. Larson's opinion, the ALJ did not consider the treatment records and Plaintiff's own testimony substantiating the finding of medical improvement beginning March 1, 2017.   Notably, the ALJ considered that very evidence when he assigned "little weight" to the July 2018 opinions of the treating therapist, Tiffany Heckel, M.S.W., L.C.S.W. (Tr. 82, 1046-54).   Like Dr. Larson, Ms. Heckel considered the four areas of mental functioning known as the paragraph "B" criteria and opined that Plaintiff had "extreme" limitations in the first three areas and a "marked" limitation in the fourth area (Tr. 1046-54).   The ALJ explained that he found Ms. Heckel's limitations inconsistent with her own treatment notes which documented Plaintiff's reports of improved mental functioning in 2017 and 2018 with receipt of treatment, improved activities of daily living, improved capacity for handling stressors with a positive attitude, reduced nightmares, and the ability to get her driver's license back (Tr. 82, citing Tr. 1046-54, 1077-1206).[9]   Considering the ALJ's rationale for discounting Ms.

---

8 Dr. Larson indicated Plaintiff satisfied the paragraph "B" criteria because he opined that Plaintiff had an "Extreme" limitation in the first three areas of mental functioning and a "Marked" limitation in the fourth area of mental functioning (Tr. 1059-60).

9 The ALJ noted that the determination whether a claimant meets or medically equals a listing is reserved to the Commissioner (Tr. 82).   The ALJ also observed the opinions of Tiffany Heckel, M.S.W., L.C.S.W., cannot constitute documentation of severe or disabling vocational limitations because she was not an acceptable medical source under the regulations (Id.).   Notwithstanding, the ALJ explained that he gave little weight to Ms. Heckel's opinions because they were inconsistent with her own treatment notes (Id.).

Heckel's July 2018 assessment, the ALJ probably would have also assigned "little weight" to Dr. Larson's identical assessment if the ALJ had realized that Dr. Larson rendered it in August 2018, not June 2016.   In sum, Finding Nos. 15, 16, and 17 are supported by substantial evidence in the record and comport with applicable law.   Thus, there is no merit to Plaintiff's challenge.

Finding Nos. 21, 22, 23

Plaintiff indicates these findings are "unsupported by substantial evidence for the forgoing reasons" (DN 14 PageID # 1295).   Thus, Plaintiff is relying on her contentions regarding Finding Nos. 15, 16, and 17.   For the reasons set forth above, Plaintiff's challenges to Finding Nos. 15, 16, and 17 are without merit.   Therefore, Plaintiff's claims as to Finding Nos. 21, 22, and 23 are also without merit.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

25

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

March 18, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

26